UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                DECISION & ORDER

            Plaintiff,

                                               05-M-4037

    v.

JAMAR LEWIS,

           Defendant.
_____

        The defendant Jamar Lewis was arrested on June 8, 2005, and charged in a criminal complaint dated June 7, 2005 with narcotics distribution and narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  The charges arise from alleged activities during the period December 2004 to June 2005.

        At the initial appearance on the complaint, counsel for the government moved to detain Lewis on three separate grounds: first, under 18 U.S.C. § 3142(f)(1)(B) because he has been charged with an offense for which the maximum penalty is life imprisonment; second, under 18 U.S.C. § 3142(f)(1)(C) because he has been charged with a narcotics offense under the Controlled Substances Act (21 U.S.C. §§ 801, *et seq*.) for which the maximum term of imprisonment is 10 years or more; and, third, under 18 U.S.C. § 3142(f)(2)(A) because he poses a serious risk of flight.[1]  The government alleges that there exist no conditions or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety

---

[1] At the initial appearance, government counsel also moved to detain Lewis on the grounds that he is detainable under 18 U.S.C. § 3142(f)(1)(A).  Two days later, at the detention haring, counsel moved to withdraw that application, conceding that Lewis is not charged with a crime of violence.  *See United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

of the community. This Court's obligation under the Bail Reform Act (18 U.S.C. §§ 3141 *et seq.*) is to set "the least restrictive . . . condition, or combination of conditions, that . . . will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

This case also gives rise to a statutory presumption under 18 U.S.C. § 3142(e) that there are no conditions or combination of conditions which will both assure the appearance of the defendant as required and the safety of the community. Congress has determined that a presumption of detention should arise in certain cases, namely, where the court finds there is probable cause to believe that the defendant has committed a federal drug offense under the Controlled Substance Act for which a maximum prison term of 10 years or more is prescribed. *See* 18 U.S.C. § 3142(e). If the defendant has been indicted, that indictment satisfies the requirement of a probable cause finding. *United States v. Contreras*, 776 F.2d 51, 54-55 (2d Cir. 1985). If the defendant has not been indicted, the court must determine whether probable cause exists. If so, the government may rely on the presumption; if not, then no presumption of detention shall exist.

This Court conducted a detention hearing on June 10, 2005. Both the government and the defendant proceeded by proffer. *See United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (government may proceed by proffer in detention hearing); *United States v. Martir*, 782 F.2d 1141, 1147 (2d Cir. 1986) (judge must ensure reliability of evidence proffered by "selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question"). This Court has considered the extensive presentations of the facts relating to the issues before the Court, as well as the provisions of the Bail Reform Act

(the "Act") and the relevant law concerning the Act.  This Court has also considered a report prepared by the Pretrial Services Agency, dated June 9, 2005, the contents of which are hereby incorporated by reference, and the complaint in the instant case dated June 7, 2005.  The Pretrial Services Agency report recommends that Lewis be detained, concluding that "[t]here are no conditions or combination of conditions available that would adequately address the risk of danger issues identified."

With respect to the government's motion, this Court has reviewed whether the government has met its burden on its application for detention.  I note that the burden of proof on the government's motion is to prove by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the presence of this defendant at subsequent court appearances and ultimately at trial.  *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987).  The government also has the burden of proving by clear and convincing evidence that the defendant poses a danger to another person or the community.  *See* 18 U.S.C. § 3142(f); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991).

In determining whether there are conditions of release which will reasonably assure the appearance of the defendant as required and the safety of any other person or the community, this Court is required to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involving a narcotic drug;
>
> (2) the weight of the evidence against the defendant;
>
> (3) the history and characteristics of the defendant, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

3

>community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning court appearances, and whether at the time of the current offense or arrest, the defendant was on probation, parole, or any other release pending trial, sentencing, appeal or completion of sentence; and,
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g). As mandated, I have considered available information concerning these factors as provided in the proffers made at the detention hearing and in the Pretrial Service Agency report.

The defendant Jamar Lewis is a twenty-seven year-old male, who is a lifelong resident of Rochester, New York (the district of arrest and prosecution). He has numerous family members residing in this district, many of whom apparently attended his detention hearing on June 10, 2005. He is unmarried and the father of three young children, none of whom currently resides with him

The defendant is not employed. He reported that he earns some money by working on properties owned by his mother and godfather. Despite being 27 years old, his only previous period of employment was a three-month period with a temporary agency. Consistent with his lack of employment, he reports having no assets and states he is dependent on his mother and his girlfriend for support.

Lewis states that he is in good physical and mental health. While he has some history of drug treatment, he admits that he is a regular user of marijuana, smoking a blunt several times per week.

The current charge is not Lewis's first involvement with the criminal justice system. Rather, he has five prior convictions – two for felonies and three for misdemeanors. In 1996, he was convicted of criminal possession of a loaded firearm in the third degree and sentenced to ten weeks' imprisonment and five years of probation. He violated the terms of probation in 1998 and was resentenced to a one to three year term of incarceration.

That violation apparently stemmed from Lewis's participation in additional criminal conduct, which resulted in a second felony conviction. This time, he was convicted in 1998 of criminal possession of a controlled substance in the fifth degree and sentenced to one to three years' imprisonment. He was paroled in December 1999 and, while on parole, committed a third offense.

Lewis's third conviction, a misdemeanor conviction, occurred on October 2, 2000. He was convicted of another narcotics offense, criminal possession of marijuana in the fifth degree, and sentenced to ninety days in jail. Shortly after release, Lewis was again convicted of the same offense and sentenced to a conditional discharge and twenty-eight days in jail.

Lewis violated the terms of his conditional discharge by committing further criminal conduct. This time, he was convicted of criminal sale of marijuana – his fourth narcotics conviction – and sentenced to five months' imprisonment. This conviction, like the four prior convictions, resulted from a guilty plea by Lewis.

The pending complaint charges the defendant with participating in a cocaine base distribution conspiracy and with distributing, and possessing with intent to distribute, cocaine base. In view of his criminal history, Lewis faces a statutory mandatory minimum sentence of 20 years and a maximum sentence of life imprisonment, if convicted. *See* 21 U.S.C. § 841(b)(1)(A).

As the government proffered, three co-defendants informed law enforcement that Lewis was involved in drug dealing: first, Flora Williams, Lewis's aunt, during the course of an undercover purchase from her of crack cocaine, told the agent that she obtained her narcotics from her nephews, who lived on DeJonge Street (the complaint stated that Jamar and Allen Lewis resided at 25 DeJonge Street); second, Anthony Grimes, during a post-arrest statement on other charges, stated that he had purchased crack cocaine from the defendant on over 100 prior occasions; and third, Rondell Wade, who allegedly sold crack cocaine to an undercover agent on several occasions, advised that, at the direction of Terrance Bell (another co-defendant), he purchased "eight-balls" of cocaine from the defendant on approximately thirty prior occasions. He also stated that the cocaine that he (Wade) had sold the undercover agent on two previous occasions had come from Lewis. Consistent with this assertion, on March 4, 2005, according to the government's proffer, Terrance Bell advised the undercover agent that they needed to go to DeJonge Street. When they arrived at DeJonge Street, Bell told Smith to get "Jamar." The officer then observed Bell, Smith and Jamar Lewis meet in front of 25 DeJonge Street, walk up the driveway and disappear for several moments. After they reappeared, Smith returned to the undercover vehicle and handed the undercover agent ten bags of crack cocaine, amounting to approximately 30 grams.

    In addition to the allegations in the Complaint, the government's proffer also included information about Lewis's activities on the day of his arrest. On that date, in addition to effecting several arrests, law enforcement officers also executed various search warrants. While this activity was ongoing, law enforcement officers observed Jamar Lewis ride a bicycle to 13 Princeton Street, where his mother lives. He was seen entering the residence and leaving a short

while later, again on his bicycle, carrying or wearing a black backpack with red trim.  He rode to 66 Almira Street, where he entered with the backpack.  He exited without the backpack and was arrested.

Lewis unsuccessfully attempted to flee on his bicycle as agents arrested him.  When he was arrested, he possessed approximately twenty grams of marijuana and $3,000 in cash.

Following Lewis's arrest, agents continued to conduct visual surveillance of 66 Almira Street until they obtained a search warrant.  When the warrant was executed, they discovered the backpack inside the location.  Inside the backpack were two loaded firearms and a substantial quantity of ammunition.  During the search of 66 Almira Street, agents also discovered identification and correspondence belonging to Lewis and a man's coat, containing a loaded pistol in the pocket.  One of the residents of the location, who identified herself as Lewis's girlfriend, told the agents that the coat and the gun belonged to the defendant.

At the detention hearing, Lewis argued that the government had not established that the backpack was the same backpack he had been seen carrying earlier.  On rebuttal, the government proffered that the backpack had been identified by one of the agents as the same backpack and that no other backpacks fitting the description of the one Lewis was seen carrying had been located during the search.  I find the government's proffer convincing that the backpack searched was the same backpack Lewis retrieved from one location and deposited in another.

I further find that the charged conduct and Lewis's activities on the day of his arrest (movement of loaded firearms, attempted flight, possession of $3,000 in cash), coupled with his criminal history and record of compliance – in this case, non-compliance – with court

supervision (conditional discharge, probation and parole), leads me to conclude that the government has met its burden of proof by clear and convincing evidence that the defendant poses such a danger to the community that there exist no combination of conditions of release to adequately assure against it.  He has four prior narcotics convictions, including a felony and criminal sale conviction, and a prior felony weapons offense.  Because of his prior felony convictions, his possession of firearms – if such were to be proven beyond a reasonable doubt – would constitute a crime of violence, as defined by the Second Circuit.[2]  *See*, *e.g.*, *United States v. Dillard*, 214 F.3d 88 (2d Cir. 2000), *cert. denied*, 532 U.S. 907 (2001).  Moreover, I find on the record before me that the government has demonstrated by clear and convincing evidence that there are no conditions of release that could protect the community against the risk of continued drug dealing were the defendant released.  *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (narcotics trafficking constitutes "harm to society").  In this respect, I rely not only on the government's proffer concerning the charged offenses, but also on the defendant's own record of violating conditional discharge, probation and parole terms by engaging in additional drug offenses.

While it is a close case, I find that the government has not met its burden on its motion that the defendant poses a serious risk of flight.  Despite his many prior convictions, no

---

[2] While Lewis's attorney is correct that the government cannot move to detain Lewis on the grounds that his charged conduct involved a crime of violence, *see* 18 U.S.C. § 3148(f)(1)(A), this Court is nonetheless entitled to consider the government's proffer concerning Lewis's alleged possession of loaded weapons.  *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("We have never required . . . a nexus [between the alleged dangerous conduct and the charged conduct], nor do we impose such a requirement today.  The issue is whether a defendant poses a danger to the community.  Shooting a man in the kneecap over a small dept is probative of dangerousness, regardless of whether the incident was related to drug trafficking.").  Because I find the government's proffer to be reliable, I do weigh such conduct in my determination whether to release or to detain Lewis.  Such conduct is a factor that weighs significantly against Lewis's release.

bench warrants have issued.  Were risk of flight the only basis for detention, I would determine that his mother's property, assuming she were willing to post it, coupled with home incarceration and electronic monitoring, would reasonably assure against risk of flight.  Those conditions, however, are inadequate to guard against danger to the community, in this Court's estimation.

In addition, the government seeks to rely on the statutory presumption of detention that arises because Lewis has been charged with a narcotics offense for which the statutory maximum penalty exceeds ten years' imprisonment. 18 U.S.C. § 3142(e).  In this case, I specifically find that there is probable cause to believe that Lewis has committed such an offense.

When the government relies on the presumption, the defendant must come forward with some evidence to rebut the presumption, although the government retains the ultimate burden of persuasion.  *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).  Once a defendant introduces some rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *United States v. Martir*, 782 F.2d at 1144.  In this case, while the defendant has come forward with some evidence to rebut the presumption, I find that the presumption still carries some weight and deserves consideration in determining whether any release conditions are adequate to ensure the defendant's return to court and the safety of the community.

For the reasons stated, including consideration of the statutory presumption of detention, this Court grants the government's motion for detention and orders that the defendant

Jamar Lewis be detained.[3]  I find that the government has met its burden by clear and convincing evidence that there is no set of conditions that would reasonably assure the safety of the community if the defendant were to be released.  I also find that the government has *not* met its burden of demonstrating by a preponderance of the evidence that there are no conditions or combination of conditions that would reasonably assure the presence of the defendant at subsequent Court appearances.  Thus, I deny the government's motion on this basis.

Pursuant to 18 U.S.C. §§ 3145(a)(1) and (2), both the government and the defendant have the right to seek review by the district court of this decision.

**IT IS SO ORDERED.**

  s/Marian W. Payson
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 13, 2005.

---

[3] I note that I would reach the same determination in the absence of the statutory presumption.